In re JAMES R. CORBITT CO., Debtor.

John W. GUINEE, Jr.,
Trustee, Plaintiff,

v.

BOARD OF SUPERVISORS OF
FAIRFAX COUNTY, Defendant,

and

Merritt Commercial Savings and Loan,
Inc., Intervenor.

Bankruptcy No. 81–00323–A.
Adv. No. 82–0342–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 6, 1986.

John W. Guinee, Jr., Reston, Va., trustee in bankruptcy.

Stephen E. Leach, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for trustee.

Mark A. Moorstein, Fairfax, Va., for Merritt Commercial Sav. and Loan, Inc.

Lawrence Phelps, Office of the Fairfax Co. Atty., Fairfax, Va., for Fairfax County, Va.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This case presents a question regarding the scope of the opinion of the United States Court of Appeals for the Fourth Circuit, rendered upon appellate review of this Court's denial of the motion of Merritt Commercial Savings and Loan, Inc. ("Merritt") to intervene into litigation between the trustee and the Board of Supervisors of Fairfax County, Virginia ("Fairfax County"). Merritt claims that the Fourth Circuit's decision in *Merritt Commercial Savings and Loan, Inc. v. Guinee*, 766 F.2d 850 (4th Cir.1985) settled all issues regarding Merritt's assertion, as subrogee, of the setoff right against the debtor afforded Fairfax County by section 553 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101–151326 ("the Code"). Merritt, before this Court under the Fourth Circuit's order of remand, moved for an accounting and an order of setoff.

The trustee disagrees with Merritt's interpretation of the Fourth Circuit's opinion. The legal issues surrounding Fairfax County's setoff claim have never been litigated, the trustee contends. The Fourth Circuit, therefore, could not have intended that its ruling on Merritt's intervention right foreclose all opportunities to contest the legal propriety of a setoff. Rather, the trustee argues, the holding of the circuit court indicated only that Merritt be permitted to intervene and to assert, as subrogee, the setoff rights held by Fairfax County. The task before this Court, in the trustee's view, is to entertain and evaluate argument on whether Fairfax County, and therefore its successor-in-interest, Merritt, holds a valid right of setoff under section 553 of the Code.

The debtor, James R. Corbitt Co. ("Corbitt"), was a construction contractor. In the course of the debtor's development of residential properties in Fairfax County, the debtor and the County entered into numerous contracts, which now form the basis for the County's claims against the debtor's bankruptcy estate. One contract

at issue concerned the debtor's development of a subdivision in Reston, Virginia, designated Reston 24A. In October of 1977, the debtor and Fairfax County contractually agreed that Corbitt would provide street and other improvements as a part of its development of Reston 24A (the "Reston 24A Agreement"). As part of its bargain, the debtor posted a performance bond, upon which Merritt bound itself as surety.

The remaining twenty-seven contracts were all of a single type. As a condition of administrative approval of the debtor's plans for development of properties throughout the county, Fairfax County required that the debtor comply with County conservation ordinances. Corbitt entered into twenty-seven separate agreements with Fairfax County (the "Conservation Escrow Agreements"), under each of which the debtor was required to deposit a sum of money to be held in escrow as security for the debtor's compliance with the conservation regulations. The aggregate sum deposited by the debtor was $40,850.00.

In February of 1981, after the debtor defaulted on its obligation to provide improvements for the Reston 24A subdivision, Fairfax County filed a breach of contract suit in the Circuit Court of Fairfax County naming as defendants both the debtor and its surety, Merritt. Corbitt filed its petition for relief under Chapter 7 on March 19, 1981. Although the filing of the petition stayed the County from pursuing its state court action against the debtor, the County maintained its suit against Merritt, now the sole defendant. In September of the same year, Fairfax County obtained judgment under the performance bond against Merritt in the amount of $68,433.30.

Fairfax County filed a Proof of Claim with the Clerk of this Court in which the County asserted indebtedness stemming from both the breach of the Reston 24A Agreement, valued in accordance with the state court's judgment (not yet satisfied by Merritt) at $68,433.30, and from Corbitt's failure to adhere to the conservation ordi-

nances embodied in the 27 Conservation Escrow Agreements, valued at $17,045.55.

The trustee initiated under section 542(a) an adversary proceeding designed to compel Fairfax County to turn over the funds held in escrow pursuant to the Conservation Escrow Agreements. The trustee alleged that the sum was property of the debtor's bankruptcy estate. Fairfax County argued that the escrowed funds were not property of the estate, and also asserted its right under section 553 to setoff against the fund the damages it suffered due to both the conservation ordinance violations and the construction default at Reston 24A.

The matter was set for trial. After discovery, the parties filed cross motions for summary judgment. Before the Court ruled on the motions, the parties submitted for the Court's approval a compromise of the turnover dispute. The proposed settlement agreement was distributed to all parties at interest; Merritt objected, arguing that the settlement failed to protect its rights against the debtor.

Under the terms of the settlement, Fairfax County was to turn over to the trustee $33,350.00 of the escrow fund. Fairfax County was to retain the remaining $7,500.00 of the principal balance and any accrued interest. Merritt, concerned that the County had abandoned its $68,433.30 claim against the debtor for breach of the Reston 24A Agreement in favor of recovery against Merritt on the state court judgment, sought to intervene. Merritt urged that it was entitled, by virtue of its liability as surety, to intervene and compel the County to assert its section 106(b) setoff claim for the Reston 24A damages. Merritt interpreted section 106(b) of the Code as establishing a compulsory setoff:

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106(b) (1978).

This Court disagreed, holding that section 106(b) provided no right of setoff for Fairfax County. Titled "waiver of sover-

eign immunity", the section was designed, in this Court's evaluation, to give the debtor rather than the municipality involved an option to set off municipal claims. Because Merritt could not compel the debtor to assert a counterclaim it wished to relinquish, the Court overruled Merritt's objection and approved the settlement. By separate order, the Court denied Merritt leave to intervene.

The District Court for the Eastern District of Virginia affirmed. *Merritt Commercial Savings and Loan, Inc. v. Guinee*, No. 84-0267-A (E.D.Va. July 30, 1984), *rev'd*, 766 F.2d 850 (4th Cir.1985). The district court stated:

> Merritt's Motion to Intervene and its Objection to the proposed settlement are both grounded on Merritt's assertion that Fairfax County is under a duty to use the funds that it holds in escrow as a set-off against the damages it suffered from Corbitt's defaults. If no such duty exists, Merritt's intervention in the action and its objection to the settlement would be fruitless.

*Id.* slip op. at 4. The district court agreed with this Court's judgment that section 106(b) imposes no requirement that a governmental unit press its interests; section 106(b) merely provides for a limited waiver of sovereign immunity by a governmental entity filing a proof of claim against a bankruptcy estate. Because Merritt presented no theory under which it could compel either Fairfax County or the debtor to assert a right of setoff, should one exist, the district court affirmed this Court's denial of leave to intervene.

Merritt further appealed the decision of the lower courts to the United States Court of Appeals for the Fourth Circuit. *See Meritt Commercial Savings and Loan, Inc. v. Guinee*, 766 F.2d 850 (4th Cir.1985). The circuit court concurred in this Court's interpretation of section 106(b) but, relying on a theory not presented and cases not cited to either this Court or the district court, found that Merritt had a right to intervene in the adversary proceeding under Federal Rule of Civil Procedure 24.[1] The circuit court held that a surety against whom judgment has entered and whose principal is insolvent has the right to assert against the debtor/principal any counterclaim or setoff right available to the creditor. Merritt therefore met the test for intervention as of right set forth in Rule 24, for Merritt had an "interest" in the turnover proceeding not adequately represented by the parties.

Under the traditional law of suretyship, the circuit court noted, a surety cannot compel the creditor to proceed against the defaulting principal in any fashion, including assertion of a setoff. The surety may only avail itself of the creditor's rights against the debtor upon the surety's payment of the principal's obligation. Before such payment, the surety's recourse is limited to an action against the principal based upon the contract of indemnity which is implied by law in the suretyship relation.

When the principal is insolvent, however, neither an action on the implied contract of indemnity nor the right, gained by payment of the debt to the creditor, to sue the debtor on the obligation itself is of significant value. In the bankruptcy context, therefore, the usual limitations of action deprive the surety against whom judgment has entered of an appropriate recovery. The strong likelihood that the surety would bear the ultimate burden of repayment to the creditor ignores the classic definition of the relationship between principal and surety found in the Restatement of Security:

> Suretyship is the relation which exists where one person has undertaken an obligation and another person is also under an obligation or other duty to the obligee, who is entitled to but one performance, and as between the two who are bound, *one rather than the other should perform.*

---

1. Federal Rule of Civil Procedure 24 is made applicable to this adversary proceeding by

Bankruptcy Rule 7024.

Restatement of Security § 82 (emphasis added).

The remedy adopted by the Fourth Circuit permits a surety to be subrogated to the rights of the creditor upon the principal's insolvency, despite the surety's failure to satisfy the principal's obligation. Thus, the Fourth Circuit permitted Merritt to intervene into the instant turnover proceeding to assert the rights it acquired as subrogee of Fairfax County.

At issue before this Court, however, is the effect to be given the following language in the Fourth Circuit's opinion:

> ... [I]t is evident that as a surety Merritt has a right to compel the County to assert its setoff right against the insolvent debtor. Merritt's right to benefit from the County's setoff right, that is, to reduce its liability to the County by the amount of the County's setoff right against the estate exceeding $17,045.55,[5] certainly demonstrates that Merritt has an "interest" in the turnover proceeding brought and subsequently compromised by the trustee.

5. Merritt will benefit from the County's right to setoff only by that amount exceeding $17,045.55, which represents the County's claim for damages directly related to the debtor's breach of the conservation escrow agreements. The escrowed funds which are the subject of the County's setoff right are to be applied first to the County's claim that is directly related to the funds and then to the County's remaining claim, the claim on which Merritt is liable.

766 F.2d at 855.

Upon remand, Merritt moved this Court to order an accounting and setoff, claiming that the Fourth Circuit

> stated unequivocally that the escrowed funds were subject to the County's setoff rights and that a release of any escrowed funds to the trustee would reduce the County's setoff rights. The use of unequivocal language and the lack of any qualifying language indicates that the Court has already determined that the escrow funds may be applied to the County's claim on which Merritt is also liable.

Memorandum in Support of Motion of Intervenor for Accounting and Setoff at 3.

The trustee argues in opposition to the motion that the Fourth Circuit ruled only that Merritt had a right to intervene and assert as subrogee Fairfax County's section 553 setoff right. The trustee contends that the validity and extent of the County's setoff right remains undetermined, for no court has yet heard evidence on the matter.

The trustee concedes that the language of the Fourth Circuit's opinion, if taken literally, permits the conclusion that Fairfax County has a right to set off its Reston 24A damages against the escrow fund. However, the matter before the circuit court was the threshold issue of Merritt's right under Federal Rule of Civil Procedure 24 to intervene in the trustee's section 542(a) recovery action. The trustee correctly notes that a decision on the merits of the setoff claim was unnecessary to a proper resolution of the intervention issue. Thus, in the trustee's estimation, the language at issue was intended as a mere description of the parties' potential situation.

■ Merritt's reading of the Fourth Circuit's decision runs counter to settled principles of appellate review. As a matter of judicial administration, appellate courts decline to consider matters which have not been passed upon by the lower court. *See Anderson v. City of Albany*, 321 F.2d 649, 658 (5th Cir.1963) (circuit court declined to consider matters upon which trial court had not made findings of fact). *See also Baker v. Carr*, 369 U.S. 186, 193, 82 S.Ct. 691, 699 n. 16, 7 L.Ed.2d 663 (1962) ("We need not reach the question ... because the District Court has not yet decided it."). Neither this Court nor the district court ruled on the validity or extent of Fairfax County's right of setoff under section 553.

■ In view of this settled principle, and in view of the fact that a decision on the merits of the setoff claim was unnecessary to proper review of the intervention issue, this Court need accept as dispositive only the clearest indication that the appellate court accepted for decision on the merits an

issue not previously decided at trial. No such clear indication exists.

■ The circuit court's decision refines in the bankruptcy context the operation of the law governing a surety's subrogation to the rights of a creditor. A fundamental tenet of the principle of subrogation, undisturbed by the *Merritt* holding, is that a surety gains by subrogation to the rights of a creditor only those rights possessed by the creditor.

> The rights to which the subrogee succeeds are the same as, but no greater than, those of the person for whom he is substituted. He cannot acquire any claim, security, or remedy the subrogor did not have. Moreover, the rights, claims, and securities to which he succeeds are taken subject to the limitations, burdens, and disqualifications incident to them in the hands of the party to whom he is subrogated, and subject to any defenses that might be used against the latter.

73 Am.Jur.2d *Subrogation* § 108 (1974). *See Perlman v. Reliance Insurance Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

Clearly, a finding that a surety is subrogated to the rights held by a particular creditor does not settle all issues regarding actual recovery from the principal by exercise of those rights. In order to have made the far-reaching finding alleged by Merritt, the circuit court must have entertained evidence sufficient to support a factual finding of Fairfax County's entitlement to a section 553 setoff.

The text of section 553 suggests the complexity of the factual showing necessary and the multitude of factual challenges available to the trustee:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that

arose before the commencement of the case, except to the extent that—

> (1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;
>
> (2) such claim was transferred, by any entity other than the debtor, to such creditor—
>
> > (A) after the commencement of the case; or
> >
> > (B)(i) after 90 days before the date of the filing of the petition; and
> >
> > (ii) while the debtor was insolvent; or
>
> (3) the debt owed to the debtor by such creditor was incurred by such creditor—
>
> > (A) after 90 days before the date of the filing of the petition;
> >
> > (B) while the debtor was insolvent; and
> >
> > (C) for the purpose of obtaining a right of setoff against the debtor.
>
> (b)(1) Except with respect to a setoff of a kind described in section 362(b)(6) or 365(h)(1) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
> > (A) 90 days before the date of the filing of the petition; and
> >
> > (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
>
> (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.
>
> (c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immedi-

ately preceding the date of the filing of the petition.

11 U.S.C. § 553 (1978) (amended 1984).

■ Nothing in the Fourth Circuit's opinion indicates that the proceeding before that court had as its focus the effect of, rather than the prospect of, Fairfax County's setoff right. The language used by the *Merritt* court seems directed to a completely different issue: the fact that the County's damage claim for breach of the Conservation Escrow Agreements should be satisfied from the fund before any monies were used, in the event a valid right of setoff existed, to satisfy the debtor's obligation on the Reston 24A performance bond. The circuit court thus made it clear that Merritt's derivative right to recovery was inferior to Fairfax County's primary right to satisfaction from the escrow fund.

It is not helpful to Merritt's present argument that Merritt previously opposed consideration by the district court of issues not examined in the course of this Court's denial of Merritt's motion to intervene. Merritt argued in its brief to the district court that the trustee's factual defenses to Fairfax County's alleged right of setoff could not be considered on appeal because they were neither litigated before nor decided by this Bankruptcy Court. Appellant's Reply Brief at 8. Merritt correctly characterized the district court's task in reviewing this Court's ruling as limited to matters in the record. Merritt stated:

> [T]he Bankruptcy Court rulings were based solely on the allegations contained in Merritt's Motion to Intervene and upon facts represented in the Notice of the Trustee's Application for Leave to Compromise Claim. Since no evidence was proffered, nor was there a finding as to [the factual defense asserted by the trustee, the trustee's] argument cannot be considered at this time by this court.

*Id.* at 8–9.

Merritt has since seized upon some fortuitous language in the Fourth Circuit's opinion, and now argues that the opinion settles all factual issues regarding Fairfax County's entitlement to a setoff. However, settled principles of appellate review, and the plain language of the circuit court's opinion do not mandate the conclusion urged by Merritt. The validity and extent of the County's setoff right has yet to be litigated. The district court obviously agreed, for that court's opinion specifically noted the eventuality then acknowledged by Merritt that, if permitted to intervene by an appellate court, Merritt could return to the bankruptcy court and "assert the County's right to set-off funds." *Merritt Commercial Savings and Loan, Inc. v. Guinee,* No. 84–0267–A, slip op. at 4 (E.D.Va. July 30, 1984).

The Fourth Circuit phrased its holding as follows:

> Finding that the bankruptcy court erred by denying Merritt's motion to intervene in the turnover proceedings and that the district court erred by affirming the denial of intervention, we vacate the denial of intervention. Since by denying intervention the bankruptcy court also denied Merritt ... *the opportunity to present its objections* to the proposed compromise agreement, we also vacate the bankruptcy court's decision, which was affirmed by the district court, approving the proposed compromise agreement.

766 F.2d at 855 (emphasis added). The conclusion to be drawn is clear. The trustee is entitled to his day in court, at which time intervenor Merritt will be afforded the opportunity to assert as subrogee whatever setoff rights are held by Fairfax County. This Court must deny Merritt's Motion for Accounting and Setoff as premature, for no court has yet determined that there exists a valid right of setoff under section 553 of the Bankruptcy Code.

An appropriate Order will enter.